NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1577
_____

THOMAS AHEARN,
as parents and natural guardians of
Louis Ahearn, EILEEN AHEARN,
as parents and natural guardians of Louis Ahearn,

Appellants

v.

EAST STROUDSBURG AREA SCHOOL DISTRICT;
COLONIAL INTERMEDIATE UNIT 20
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 3-19-cv-00868)
Honorable Malachy E. Mannion, United States District Judge
_____

Submitted under Third Circuit L.A.R. 34.1(a)
February 9, 2021

BEFORE: CHAGARES, SCIRICA, and COWEN, <u>Circuit</u> <u>Judges</u>

(Filed: March 5, 2021)

_____

OPINION[*]

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

_____

COWEN, Circuit Judge.

Plaintiffs Thomas Ahearn and Eileen Ahearn, as parents and guardians of their adult son Louis Ahearn, appeal from the order of the United States District Court for the Middle District of Pennsylvania granting the motion to dismiss filed by Defendants East Stroudsburg School District and Colonial Intermediate Unit 20. We will affirm.

I.

During the 2013-2014 school year, Louis attended East Stroudsburg High School North and was educated in an autistic support class conducted by Colonial Intermediate Unit 20. Louis "has been identified as an individual with an intellectual disability, autism, and speech and language impairment." (A34; see also A35 (alleging that Defendants were aware that Louis had several specified skills limitations).) "To allow for the attendance of [Louis] at the East Stroudsburg Area School District, the Defendants developed a staff action for emergency plan 'SAFE PLAN' in order to redirect him and keep him on task during the school day." (A35.) However, Defendants allegedly failed to follow the plan. Specifically, Plaintiffs alleged that, on one occasion, their son was restrained and placed in handcuffs by a school resource officer at the request of the Defendants' representatives. On another occasion, he was allegedly locked in a school bathroom (where he caused harm both to himself as well as items in the room). "At no time prior to treating Louis in this way did the Defendants call the Plaintiffs and/or 911 as indicated in Louis' 'SAFE PLAN.'" (A36.) According to Plaintiffs, Defendants' actions caused Louis to develop fear, become afraid of strangers, and have an aversion to using

2

restrooms and bathrooms. Because they were concerned that Defendants could not educate Louis and follow the SAFE PLAN, Plaintiffs enrolled him in a different school in November 2015. Plaintiffs also alleged that Louis would require additional educational support beyond the time frame mandated by the Commonwealth of Pennsylvania.

Plaintiffs filed a state court action against Defendants, alleging, inter alia, violations of the Fourteenth Amendment and Section 504 of the Rehabilitation Act, 29 U.S.C. § 504. After Defendants had removed the case to the District Court and moved to dismiss for failure to exhaust administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), Plaintiffs filed an amended complaint. In their amended complaint, they advanced a Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 and a disability discrimination claim under Section 504. Defendants again moved to dismiss for failure to exhaust administrative remedies. The District Court granted the motion "[because] both of plaintiffs' federal claims against defendants fall under the IDEA and [because] plaintiffs have not exhausted the IDEA administrative remedy process." Ahearn v. E. Stroudsburg Sch. Dist., CIVIL ACTION NO. 3:19-0868, 2020 WL 754337, at *8 (M.D. Pa. Feb. 13, 2020).

## II.

"The IDEA requires participating states to provide disabled children with a FAPE [free and appropriate public education], 20 U.S.C. § 1412(a)(1)(A), and sets forth an administrative mechanism for resolving disputes concerning whether a school has complied, id. § 1415." Wellman v. Butler Area Sch. Dist., 877 F.3d 125, 131 (3d Cir.

3

2017).  The statute requires exhaustion of other federal claims "seeking relief that is also available" under the IDEA:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).  Accordingly, "exhaustion of the IDEA's administrative process is also required in non-IDEA actions where the Plaintiff seeks relief that can be obtained under the IDEA."  Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 272 (3d Cir. 2014).  Under the Fry test, "we consider the 'crux'—the 'gravamen'—of the complaint to determine whether a plaintiff seeks relief for 'denial of the IDEA's core guarantee [of] . . . a free and appropriate education.'"  Wellman, 877 F.3d at 127 (quoting Fry v. Napoleon Cmty. Schools, 137 S. Ct. 743, 748 (2017)).[1]

It is undisputed that Plaintiffs did not exhaust administrative remedies under the IDEA.  Plaintiffs, however, argue that the IDEA's exhaustion mandate did not apply to his claims because:  (1) the rights recently afforded by the Supreme Court in Knick v. Township of Scott, 139 S. Ct. 2162 (2019), to property owners to a federal forum for claims of unconstitutional treatment at the hands of state officials should be extended to students and families who claim the deprivation of constitutional rights in a school

---

[1]  The District Court granted Defendants' motion to dismiss for lack of subject matter jurisdiction under Federal Rule 12(b)(1).  See, e.g., Batchelor, 759 F.3d at 271-72.  We have appellate jurisdiction under 28 U.S.C. § 1291.

4

setting; and (2) the District Court erred in its application of the Fry test. We, however, conclude that the District Court appropriately applied the statutory exhaustion requirement.

Knick did not involve the application of a federal statutory provision mandating the exhaustion of administrative remedies. Instead, the Supreme Court overruled prior precedent holding that a property owner whose property has been taken by a local government has not suffered a violation of his Fifth Amendment rights and cannot bring a federal takings claim in federal court until a state court has denied his claim for just compensation under state law. See, e.g., id. at 2167-68. The Supreme Court recognized that exhaustion of state remedies is not a prerequisite to an action under § 1983. See, e.g., id. at 2167. However, the IDEA does set forth its own exhaustion requirement applicable to constitutional claims under § 1983 where the plaintiff seeks "relief that is also available" under the special education statute. See, e.g., Ahearn, 2020 WL 754337, at *7 ("The Court in Knick did not overturn Fry and did not address exhaustion under the IDEA.").

Plaintiffs further argue that exhaustion was not required under Fry because neither of the alleged incidents "had anything to do with [Louis's] educational program." (Appellants' Brief at 8.) According to Plaintiffs, they sought redress for unconstitutional conduct and discrimination in violation of the Rehabilitation Act. They also contend that, "[h]ad Louis been handcuffed or locked in a bathroom at a public facility other than the school, he could have raised the same claims against a separate entity" and that any "adult individual who had been handcuffed without justification and/or locked in a

5

bathroom would have a right to bring a claim for mistreatment" (id. at 8-9).  See, e.g., Fry, 137 S. Ct. at 756 ("First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library?  And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?  When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward.").  Furthermore, Plaintiffs contend that exhaustion should be excused as futile because the relief they seek (i.e., money damages) is not allowed under the IDEA.

We agree with the District Court that the crux or gravamen of Plaintiffs' amended complaint was the denial of a FAPE.  Far from merely referencing the SAFE PLAN to "show that the Appellees were on notice of Louis' inability to protect himself" (Appellants' Brief at 18), the pleading relied on this plan, which was developed to "allow for the attendance of [an individual identified as having an intellectual disability as well as speech and language impairment] at the East Stroudsburg Area School District." (A35.)  The amended complaint specifically alleged that, "[d]uring Louis' attendance at the East Stroudsburg High School North, the Defendants did not follow his 'SAFE PLAN.'"  (A36; see also, e.g., id. ("At no time prior to treating Louis in this way did the Defendants call the Plaintiffs and/or 911 as indicated in Louis' 'SAFE PLAN'.").)  Plaintiffs further claimed that, "[d]ue to Plaintiffs' concerns over the East Stroudsburg Area School District [sic] to educate their son, Plaintiffs enrolled Louis in the Colonial

6

Academy in Wind Gap, Pennsylvania in November of 2015, necessitating a one hour one way bus ride for Louis to attend school." (A36-A37.) In turn, Louis allegedly "will require additional educational support beyond the time frame mandated by the Commonwealth of Pennsylvania." (A38.) Plaintiffs even went to so far as to allege that the Defendants' conduct "has deprived Louis Ahearn of a free appropriate public education" (and as a result allegedly constituted unlawful discrimination under the Fourteenth Amendment). (A37.) Finally, we agree with the District Court that "'[i]t is of no moment that plaintiffs only seek monetary damages in their complaint.'" Ahearn, 2020 WL 754337, at *7 (quoting J.A. ex rel. Leduc v. Wyoming Valley W. Sch. Dist., Civil No. 15-1750, 2016 WL 4502451, at *5 (M.D. Pa. Aug. 29, 2016), aff'd, 722 F. App'x 190 (3d Cir. 2018)); see also, e.g., Rohrbaugh ex rel. Rohrbaugh v. Lincoln Intermediate Unit, 255 F. Supp. 3d 589, 597-98 (M.D. Pa. 2017) (recognizing that restraint techniques are not implemented on adult employees of schools nor are they implemented on minors in other public institutions and that alleged conduct was unique to disabled student at school, thereby indicating that complaint probably did concern a FAPE).

III.

For the foregoing reasons, we will affirm the order of the District Court.